UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**ROBERT L. SOUTHALL,**

  **Plaintiffs,**

  v.

**FORD MOTOR COMPANY,**

  **Defendant.**

Case No. 1:21-cv-529
JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

Robert Southall began working at a Ford plant in 1978. Forty-two years later, Ford fired him. Southall is black. When Ford terminated him, he was 73 years old. And he was sick—he caught COVID a few weeks before his firing. In his lawsuit, Southall claims that Ford illegally fired him because of his race, age, and disability (his COVID infection).

Ford tells a different story. According to Ford, Southall came to work while experiencing COVID symptoms and lied about it. And, Ford says, he has not identified any other similarly situated white, young, or healthy workers who Ford treated better. So Ford asks this Court to dismiss his case for failure to state a claim. Southall predictably opposes the motion, but in the alternative asks the Court to grant him leave to amend.

For reasons set out briefly below, the Court **DENIES** Ford's Motion to Dismiss (Doc. 7) Southall's race and age discrimination claims, finding that Southall's Complaint (Doc. 1) plausibly alleges both. And the Court further **GRANTS** Southall's

Motion for Leave to Amend His Complaint (Doc. 12) as to those claims. In the proposed Amended Complaint (Doc. 12-1), he provides more factual details about the alleged race and age discrimination. While his race and age claims survive a motion to dismiss as is, more specific allegations are always helpful. The Court thus **DIRECTS** Southall to file the Amended Complaint on the docket, after deleting from that Amended Complaint the disability claims.

Separately, though, the Court **GRANTS** Ford's Motion to Dismiss Southall's disability discrimination claims (Doc. 7). And because Southall's proposed Amended Complaint does not cure the deficiencies in his disability claims, the Court **DENIES** Southall's pending Motion for Leave to Amend (Doc. 12) as to those claims. That said, the Court **DISMISSES** those claims **WITHOUT PREJUDICE**, and grants Southall thirty days to seek leave to file a Second Amended Complaint, addressing the deficiencies set forth below as to those claims, if he can.

In short, as things stand, this case will proceed on the race and age discrimination claims in the Amended Complaint, but Southall has thirty days in which to seek leave to file a Second Amended Complaint expanding on his disability claims.

## BACKGROUND

When deciding a motion to dismiss for failure to state a claim, the Court assumes that the Complaint's factual allegations are true. Thus, the Court largely relies on those facts for purposes of this decision, but with the caveat that these facts

are not yet established and may never be. *Koren v. Neil*, No. 1:21-CV-9, 2022 WL 974340, at *1 (S.D. Ohio Mar. 31, 2022).

Robert Southall is a 73-year-old,[1] black, former production supervisor at a Ford transmission plant in Ohio. (Doc. 1, #2). In June 2020, he thought he had developed food poisoning, so he visited his doctor. (*Id.* at #3). His doctor told him that he should test for COVID, which he did. (*Id.*). He tested positive. (*Id.*). He went to work, told his supervisor about his test, and was sent home. (*Id.*). A few weeks later, Ford fired him. (*Id.*). Other younger, white employees were allowed to work despite testing positive for COVID. (*Id.*). He alleges his replacement was a younger, white man. (*Id.*).

Southall advances three discrimination theories in his Complaint—asserting those theories under both federal and state law. (*Id.* at #2). He claims racial discrimination under Title VII of the Civil Rights Act. (*Id.*). He claims age discrimination under the Age Discrimination in Employment Act. (*Id.*). And he claims disability discrimination under the Americans with Disabilities Act. (*Id.*). He also reasserts each of these theories under analogous state law. (*Id.* at #4, 5, 7 (citing O.R.C. § 4112)).

Ford moves to dismiss all of his claims (Doc. 7), arguing that Southall was fired because "he repeatedly refused to comply with [COVID] health and safety requirements." (*Id.* at #35). Southall responds in opposition. (Doc. 11). He also moves in the alternative for leave to amend his Complaint. (Doc. 12). In Ford's reply in support of its motion to dismiss, Ford includes its argument in opposition to Southall's

---

[1] Or at least he alleges he was 73 years old at the time he filed his Complaint. As more than a year has elapsed since filing, he is presumably at least 74 years old now.

motion to amend. (Doc. 14). Southall has not further replied. Both motions are now ripe for review.

## LAW AND ANALYSIS

Faced with a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court's sole focus is the Complaint, and the sole question goes to plausibility. That is, the Court requires factual allegations which, taken as a whole, create a plausible inference that the plaintiff has stated a viable claim. In making that determination, the Court "construe[s] the complaint in the light most favorable to" the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (internal quotation marks omitted). But that grace only extends so far. The Court cannot accept "naked assertions," legal conclusions, or "formulaic recitation[s] of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, (2007)).

The claim here is employment discrimination, so assessing plausibility requires the Court to measure Southall's allegations "against the elements of [such a] claim." *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020)). Or, as the Sixth Circuit put it:

> [A]lthough the … Complaint need not present "detailed factual allegations," it must allege sufficient "factual content" from which a court, informed by its "judicial experience and common sense," could "draw the reasonable inference," *Iqbal*, 556 U.S. at 678, 679, that [the defendant] "discriminate[d] against [the plaintiff] with respect to [his] compensation, terms, conditions, or privileges of employment, *because of* [his] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (emphasis added).

4

*Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (emphasis original).

To ultimately *prevail* on his discrimination claims, Southall would need to provide evidence, either direct or circumstantial, from which a jury could conclude that Ford acted with animus based on Southall's membership in some class (age, race, or disability status). *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995) (citing *Terbovitz v. Fiscal Court*, 825 F.2d 111, 114–15 (6th Cir. 1987), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Here, Southall does not allege that any direct evidence of discrimination exists. Thus, he *eventually* will need to prove circumstantial facts that give rise to an inference of discrimination.

The Sixth Circuit has concluded that, at the summary judgment stage, a prima facie case would consist of evidence of the following:

1. The employee is a member of a protected group.

2. The employer took an adverse employment action against him.

3. The employee was qualified for the position.

4. The employer *either*:

    a. replaced the employee with someone outside of that protected group *or*

    b. treated him worse than similarly situated employees outside that protected group.

*Talley*, 61 F.3d at 1246 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir. 1992)). This formula, which the Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and expanded upon in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981), now applies to claims of discrimination under both federal and Ohio law. *See Mitchell*, 964 F.2d at 582. It also

applies similarly to race, age, and disability discrimination claims.[2] *See, e.g., Starks v. PNC Bank*, No. 3:14-CV-175, 2015 WL 9303195, at *5 (S.D. Ohio Dec. 22, 2015).

To be clear, the Court is not suggesting that the *McDonnell Douglas* formulation creates a pleading standard, nor that Southall necessarily must show that he can prove a prima facie case under that framework to proceed beyond the pleading stage. The Sixth Circuit has clarified that is not the case. *See Keys*, 684 F.3d at 610. Still, as this Court has observed, the *McDonnell Douglas* framework creates a backdrop against which the Court can assess plausibility. *See Finley v. Miami Univ.*, 1:19-cv-984, 2022 WL 293476, at *4 (S.D. Ohio Feb. 1, 2022). In some ways, then, the framework is perhaps best understood as creating a sufficient but not necessary threshold. If Southall presents factual allegations making it at least *plausible* that he ultimately will be able to prevail under that framework, while not strictly necessary, that would suffice to allow his claim can go forward. Or, if he cannot meet plausibility when measured against the *McDonnell Douglas* elements, he must present facts that, based on the Court's common sense and judicial experience, somehow *otherwise* show that he has a plausible claim of discrimination here. Whatever that alternate pathway may look like, though, ends up irrelevant

---

[2] These elements "vary slightly depending on the theory [of discrimination] asserted." *Starks*, 2015 WL 9303195, at *5. For example, there are five elements for a disability discrimination claim. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 936 (6th Cir. 2000). The first three and the fifth are analogous to the *McDonnell Douglas* formula. *See Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999) (citing *Talley*, 61 F.3d at 1246). But the fourth element is whether "the employer knew or had reason to know of his disability." *Welsh v. Automatic Data Processing, Inc.*, 954 F. Supp. 2d 670, 680 (S.D. Ohio 2013). This element is not relevant to the Court's analysis, as it does not change the Court's conclusion about whether Southall's disability claims survive Ford's Motion to Dismiss. When relevant, the Court will clarify the differences among the elements of Southall's various claims.

here, as Southall's briefing makes clear that he seeks to satisfy plausibility by reference to the *McDonnell Douglas* framework, and the Court will take Southall's arguments as he makes them. (Doc. 11, #63).

As explained below, when measuring the allegations in Southall's Complaint against that framework, the Court concludes that Southall has met that plausibility standard for his race and age claims, but not his disability claims.

> **1. Based on his allegations, it is plausible that Southall will be able to show he is a member of a protected group for his race and age discrimination claims, but not for his disability claims.**
>
> **a. Southall's race and age discrimination claims**

The Court need not pause long on the first element regarding Southall's race and age discrimination claims. There is no question that Title VII forbids racial discrimination, and that this includes discrimination against black employees. *See, e.g., Jones v. Kilbourne Med. Lab'ys*, 162 F. Supp. 2d 813, 824–25 (S.D. Ohio 2000), *aff'd*, 35 F. App'x 203 (6th Cir. 2002). And, "[i]n age discrimination cases, the protected class includes all workers at least 40 years old." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003).

Southall alleges that he is black, and that he is 73 years old. (Doc. 1, #2). That suffices as to the first element for both his race and age discrimination claims.

> **b. Southall's disability discrimination claims**

In disability discrimination suits, the protected class includes anybody who has an impairment which substantially limits one or more of their major life activities. *Pesterfield v. Tenn. Valley Auth.*, 941 F.2d 437, 441 (6th Cir. 1991) (citing 29 U.S.C.

7

§ 706(7)(B)). The protected class also includes anybody who an employer regards as impaired, whether or not the employee truly has an impairment. *See, e.g.*, *McGonegle v. Select Comfort Retail Corp.*, No. 1:19-CV-442, 2022 WL 394381, at *3 (S.D. Ohio Feb. 9, 2022).

But merely alleging a COVID diagnosis, without more facts which make plausible that the disease substantially limited one or more of the employee's major life activities, is not enough to survive a motion to dismiss. *See Champion v. Mannington Mills, Inc.*, 538 F. Supp. 3d 1344, 1349 (M.D. Ga. 2021). Similarly, simply alleging that an employer perceived an employee as disabled because he tested positive for COVID, without more, is not enough to make plausible that the employer regarded the employee as disabled. *See id.* at 1350. In any event, legal protections for being perceived as disabled do not extend "to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).

Southall advances two theories on how he falls in the protected class for his disability claims. Both fail.

First, he says that "having COVID-19, [he] suffered from a disability recognized under" federal and Ohio law. (Doc. 1, #6–7). But he does not offer any allegations that his COVID infection substantially limited his major life activities.

Second, he says that "Ford perceived [Southall] as having a disability under [federal and Ohio law] due to his positive COVID-19 test." (*Id.*). But he offers no additional allegations from which the Court can plausibly infer that Ford regarded

8

him as disabled because of his diagnosis. In fact, his allegation that Ford continued to employ *others* who were diagnosed with COVID seems to suggest the opposite. (*Id.* at #3).

A separate problem arises in relying on COVID as the basis for a perceived as disabled claim—the typical course of COVID does not run for 6 months.[3] *See, e.g.*, Jacqui Wise, *Covid-19: Symptomatic Infection with Omicron Variant Is Milder and Shorter than with Delta, Study Reports*, BMJ: British Medical Journal (Apr. 7, 2022),[4] (citing Cristina Menni, et al., *Symptom Prevalence, Duration, and Risk of Hospital Admission in Individuals Infected with SARS-CoV-2 During Periods of Omicron and Delta Variant Dominance: A Prospective Observational Study from the ZOE COVID Study*, 399 LANCET 1618 (2022)) (noting that vaccinated patients infected with the current Omicron variant suffered symptoms for an average of 6.87 days, while those infected with the previous Delta variant suffered symptoms for an average of 8.89 days). So without additional factual allegations about a person's particular experience with COVID, the disease is a "transitory impairment" as that term is defined by statute. Thus, even if Southall alleged facts which made it plausible that Ford regarded him as transitorily impaired because of his COVID, without more, that would not give rise to a perceived-as-disabled claim.

---

[3] A version of COVID, known as long COVID, *can* run much longer and thus may be considered a disability. *Guidance on "Long COVID" as a Disability Under the ADA, Section 504, and Section 1557*, U.S. Dep't of Health & Human Servs. (July 26, 2021), https://www.hhs.gov/civil-rights/for-providers/civil-rights-covid19/guidance-long-covid-disability/index.html. But Southall does not allege that he suffered from long COVID, nor does he allege the length of time that he suffered symptoms.

[4] Available at https://www.bmj.com/content/377/bmj.o922 (last visited November 4, 2022).

His proposed Amended Complaint does not rescue him either. It contains no additional allegations that plausibly suggest that Southall's COVID condition either substantially limited a major life activity or was anything but a transitory impairment. (*See generally* Doc. 12-1).

2. **The Complaint gives rise to a plausible inference that Ford took an adverse employment action against Southall for all his claims.**

Firing someone is an adverse employment action. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)). Southall alleges that Ford fired him. (Doc. 1, #3). Simple enough.

3. **The allegations give rise to a plausible inference that Southall was qualified for his position for all his claims.**

To establish that he remained qualified for his position, a plaintiff claiming employment discrimination "need only show that [he] satisfied an employer's 'objective' qualifications." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009) (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575–76 (6th Cir. 2003)). Thus, at the pleading stage, a plaintiff relying on the *McDonnell Douglas* framework to show plausibility must allege some facts which, taken as true, make it plausible that the plaintiff was objectively qualified.

Here, Southall starts by offering a formulaic recitation that he "was qualified for his position." (Doc. 1, #2). That alone is perhaps not enough. But, beyond that, Southall also alleges that Ford employed him as a Production Supervisor at the plant for 42 years before his firing. (*Id.*). Drawing all inferences in favor of Southall, the Court, employing its "judicial experience and common sense," finds it at least

10

*plausible* that Ford's willingness to employ Southall in the same position, at the same plant, for four decades, means he satisfied Ford's objective qualifications.

> **4. Southall creates a plausible inference that he will be able to show the fourth element for his race and age discrimination claims, but not for his disability claims.**

To satisfy the fourth *McDonnell Douglas* element, an employee claiming employment discrimination needs to allege facts which establish that *either*:

a. the employer replaced the employee with someone outside of his protected group, *or*

b. the employer treated the plaintiff worse than similarly situated non-protected employees.

*Talley*, 61 F.3d at 1247 (discussing *Shah v. General Elec. Co.*, 816 F.2d 264, 268–69 (6th Cir. 1987)). Again, either option satisfies the fourth element. *Id.* Southall's Complaint alleges facts which make it plausible that he will be able to establish the fourth element for his race and age discrimination claims, as he plausibly alleges that Ford replaced him with someone outside his protected group—the first avenue identified above. But as to his disability claims, he has neither plausibly alleged that Ford replaced him a non-disabled worker, nor that Ford treated him worse than similarly situated non-disabled workers.

11

> **a. The allegations create a plausible inference that Ford replaced Southall with someone outside his protected group for his race and age discrimination claims, but not his disability claims.**
>
> > **i. Southall's race and age discrimination claims**

Southall alleges that Ford replaced him with a "Caucasian employee, Mike Ross." (Doc. 1, #3). In doing so, he alleges that Ford replaced him with someone outside of his protected racial class. This suffices for his race discrimination claim.

For age discrimination claims, the replaced-by-someone-outside-the-protected-class option for satisfying the fourth *McDonnell Douglas* element "is modified to require … merely replacement by a significantly younger person." *See Grosjean*, 349 F.3d at 335 (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 352–53 (6th Cir. 1997)).

Southall says that Ross is "substantially younger" than him. (Doc. 1, #3). On its own, this would simply be a recitation of a legal element. *See, e.g.*, *House v. Rexam Beverage Can Co.*, 630 Fed. App'x 461, 464 (6th Cir. 2015) (holding that a 49-year-old plaintiff's age discrimination did not survive a motion to dismiss because, in part, he provided no facts about the relative ages of his replacements). But Southall also alleges that he was 73 at the time of his firing. (Doc. 1, #2). Southall's advanced age, at least compared to the "typical" retirement age of 65, makes it plausible that Ross is substantially younger for purposes of an age discrimination suit. In other words, based on the Court's "judicial experience and common sense," *Iqbal*, 566 U.S. at 679, the Court finds it plausible that Southall could meet this element of an age discrimination claim.

In sum, while Southall could have added more detail in his Complaint, Southall alleges enough facts to make plausible that Ross replaced him, and that Ross was white and substantially younger than him.

Ford argues otherwise. Ford says that Southall "does not allege that Mr. Ross was similarly situated to him because he does not allege that Mr. Ross also tested positive for COVID-19 and was not terminated." (Doc. 7, #40). But that argument conflates two separate paths available to Southall under the fourth *McDonnell Douglas* element. Southall need not allege that Ross is similarly situated, if he alleges that Ross is a non-protected person who replaced him. *See Talley*, 61 F.3d at 1247; *see also Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 655 (6th Cir. 2015) (noting that Sixth Circuit cases allow plaintiffs to "establish a prima facie case under either theory").

For his race and age discrimination claims, Southall does everything he needs to plausibly allege that he will be able to meet this element. He says Ross is white and the Court can plausibly infer that Ross is substantially younger than him. And he says Ross replaced him. That is enough. Southall need not address whether Ross is similarly situated to him.

### ii. Southall's disability discrimination claims

By contrast, Southall's allegations about this element as it relates to his disability discrimination claims are not *factual*. Instead, they consist of the type of conclusory recitations that *Twombly* and *Iqbal* disallow.

13

For a disability discrimination claim, a plaintiff-employee relying on a replacement theory needs to allege facts that make it plausible that either someone non-disabled, or someone his employer perceived as non-disabled, replaced him.[5] *Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012) (citing *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 417 (6th Cir. 2004)).

But Southall alleges no facts from which the Court can plausibly infer that a non-disabled employee replaced him. To be sure, he alleges that Ross (his replacement) "was not perceived by Ford to be disabled." (Doc. 1, #3). But he offers no factual allegations supporting that conclusion, making his allegation the sort of threadbare and formulaic recitation that *Twombly* and *Iqbal* specifically disallow. And his proposed Amended Complaint alleges no new facts to make plausible that Ross was non-disabled or not regarded as disabled. (*See* Doc. 12-1, #87).

Southall's allegations thus fail to plausibly allege a disability discrimination claim under the first path for meeting the fourth *McDonnell Douglas* element.

> **b.  The Complaint does not give rise to a plausible inference that Ford treated Southall worse that similarly situated non-protected employees for his disability claims.**

An employee could instead make the fourth *McDonnell Douglas* element plausible another way—not by focusing on who replaced the employee, but by alleging facts that make it plausible to believe that the employer treated the employee worse than "similarly-situated, non-protected employees." *Adebisi v. Univ. of Tenn.*, 341 F.

---

[5] The disabled employee could alternatively allege that the position remained open. *Gecewicz*, 683 F.3d at 321. But Southall does not do that either.

14

App'x 111, 112 (6th Cir. 2009) (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (internal quotation marks omitted)). A non-protected employee is similarly situated to a protected employee when he "dealt with the same supervisor," was "subject to the same standards," and "engaged in the same conduct [as the protected employee] without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (quoting *Hollins v. Atl. Co.*, 188 F.3d 652, 659 (6th Cir. 1999)).

As for his race and age discrimination claims, Southall need pursue this alternative. That is because he already made the fourth *McDonnell Douglas* element plausible simply by alleging that he was a 73-year-old black employee replaced by a younger, white employee.

But, as described above, his allegations about the person who replaced him fall short on the disability front. So he now needs to plausibly allege that Ford treated him worse than colleagues who were non-disabled, but similarly situated in all other respects. Here again, though, he fails to clear the bar.

He *does* allege the existence of similarly situated (though unnamed) colleagues, often called comparators, whom Ford treated better. (Doc. 1, #3). But he fails to plausibly allege that the comparators were not disabled.[6] Indeed, he says nothing at all about their disability status. *See id.*

His proposed Amended Complaint does not cure these defects. While he now provides names for specific alleged comparators, he adds no allegations about their

---

[6] He does allege that these comparators are white. (Doc. 1, #3). But his race claims already satisfy the fourth *McDonnell Douglas* element.

15

disability status. (*See* Doc 12-1, #87). This is not enough for the Court to plausibly infer that the comparators fell outside the protected class.

Relatedly, the parties dispute whether Southall's chosen comparators really are similarly situated. (*Compare* Doc. 11, #62, *with* Doc. 14, #104–106). The Court need not address that question at this time, though. The comparators must be both similarly situated *and* outside the protected class. As Southall has failed to allege facts which make plausible that his chosen comparators were non-disabled, that ends the inquiry.

### 5. Ford mistakenly compares this case to *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*

In urging the Court to dismiss *all* of Southall's claims, Ford cites to *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013). (Doc. 14, #100). It derives from that case the proposition that "courts can evaluate the plausibility of a complaint by taking into account 'common sense' and the context of national and global conditions at the time of the events alleged in the complaint." (*Id.* at #103).

In *16630 Southfield*, the Sixth Circuit affirmed the dismissal of an Iraqi-American's claim that Flagstar Bank refused to lend to him because of his national origin. 727 F.3d at 503. The court did so because the obvious explanation for that refusal, according to the court, was simply Flagstar's concern about repayment due to the plaintiff's previous failures to repay, and the financial climate following the 2008 recession. *Id.* at 503, 505. Although noting that "the mere existence of more likely alternative explanations does not automatically entitle a defendant to

16

dismissal," the court also held that "[t]he reasonableness of one explanation for an incident depends, in part, on the strength of competing explanations." *Id.* at 505. There, the court concluded, the strength of the competing explanation rendered the discrimination claim implausible.

According to Ford, *16630 Southfield* requires dismissal of Southall's claims here. (Doc. 14, #103). Ford says it fired Southall in the middle of a global pandemic, after it found he was "[w]orking at a Ford facility, in-person, while symptomatic, and while awaiting the results of a COVID-19 test, during June of 2020." (*Id.*). This, Ford says, "would place the Company and its employees at considerable risk under any reasonable person's understanding." (*Id.*). Thus, concludes Ford, under *16630 Southfield*, the Court should dismiss Southall's Complaint "because there is an 'obvious,' 'common sense' alternative [explanation] for [his] termination." (*Id.*).

While it is perhaps a close call, the Court disagrees. In *16630 Southfield*, just after noting the possible alternative explanation, the Sixth Circuit then clarified that when "the complaint alleges facts that are merely consistent with liability … as opposed to facts that demonstrate discriminatory intent (i.e., disparate impact or direct evidence), the existence of obvious alternative explanations simply illustrates the unreasonableness of the inference sought and the implausibility of the claims made." *Id.* But Southall, unlike the plaintiffs in *16630 Southfield*, does not merely allege facts that are "consistent with liability." Rather, he offers allegations of "disparate impact"—Ford's alleged treatment of his comparators. (Doc. 1, #3).

17

Ford says this is not a relevant distinction. (Doc 14, #103–104). But it is. Dismissal is all about assessing the plausibility of Southall's story. Southall more or less admits in his Complaint that he showed up to work while waiting on the results of a COVID test. (Doc. 1, #3). But he also alleges the existence of substantially younger, white "employees who tested positive for COVID-19 [and] were not only not terminated, but allowed to continue to work at the plant." (*Id*.). And in his proposed Amended Complaint, he gets more specific. He names these employees. (Doc. 12-1, #87). And he also names two employees "who came to work even though their child had Covid-19." (*Id*.).

Drawing all inferences in Southall's favor, it is plausible that several employees broke COVID protocols, and Ford only fired Southall for it because he's 73 and black. This is not to say that the Court finds this to be the only plausible story, or even the most likely one. But that is not the question. Rather, the only question is whether Southall has alleged enough facts to make his race and age discrimination claims *plausible* when measured against competing alternatives. The Court concludes he has.

## CONCLUSION

Southall's Complaint (Doc. 1) alleges facts that plausibly establish race and age discrimination claims. So the Court **DENIES** Ford's Motion to Dismiss (Doc. 7) as to those claims. And the Court also **GRANTS** Southall's Motion for Leave to Amend His Complaint (Doc. 12) for those claims, as the Amended Complaint adds further detail to already viable claims. Accordingly, Southall is **DIRECTED** to file

his proposed Amended Complaint on the docket, after removing the counts asserting disability claims.

As to those disability claims, Southall failed to allege facts in his original Complaint that, taken as a whole, give rise to a plausible inference that he ultimately will be able to establish a viable claim under the *McDonnell Douglas* framework. Thus, the Court **GRANTS** Ford's Motion to Dismiss (Doc. 7) as to those claims. And because his proposed Amended Complaint does not cure that deficiency, the Court **DENIES** Southall's Motion for Leave to Amend His Complaint (Doc. 12) for those claims, as well. That said, the Court **GRANTS** Southall thirty days in which to seek leave to file a Second Amended Complaint addressing these shortcomings.

In sum, as things currently stand, this case will proceed on Southall's race and age discrimination claims as stated in his Amended Complaint, but Southall can seek leave to replead his disability discrimination claims, if he can overcome the problems identified above.

**SO ORDERED.**

December 9, 2022
**DATE**                                   **DOUGLAS R. COLE**
                                           **UNITED STATES DISTRICT JUDGE**